UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BROWN & ROOT INDUSTRIAL
SERVICES, LLC

CIVIL ACTION

VERSUS

NO. 17-361-BAJ-EWD

GREGORY NELSON

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

BROWN & ROOT INDUSTRIAL
SERVICES, LLC

CIVIL ACTION

VERSUS

NO. 17-361-BAJ-EWD

GREGORY NELSON

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand[1] filed by plaintiff, Brown & Root Industrial Services, LLC ("Plaintiff" or "BRIS"). Defendant, Gregory Nelson ("Defendant" or "Nelson") has filed an Opposition.[2] Plaintiff has filed a Reply[3] and Defendant has filed a Sur-Reply.[4]

For the reasons set forth herein, the undersigned RECOMMENDS[5] that the Motion to Remand be DENIED. In the event this recommendation is adopted, the undersigned further RECOMMENDS that this matter be referred to the undersigned for a scheduling conference.[6]

### I. Background

Plaintiff alleges that Nelson is the "president, chief executive officer and majority owner" of East West Copolymer, LLC ("EWC"), and that Plaintiff contracted with EWC to provide "labor to perform maintenance, engineering, construction, packaging services, hauling and other work and services."[7] Plaintiff alleges that at the time it contracted with EWC, Nelson induced Plaintiff

---

[1] R. Doc. 6.

[2] R. Doc. 15.

[3] R. Doc. 16.

[4] R. Doc. 19.

[5] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016).

[6] The previously set scheduling conference was canceled to allow resolution of the Motion to Remand. R. Doc. 7.

[7] R. Doc. 1-2, ¶ 5.

to believe that EWC was solvent, and that Plaintiff relied on various representations and promises by Nelson when it decided to continue providing services to EWC despite delinquencies in payment.[8] Plaintiff alleges that Nelson's conduct "constitutes intentional and unjustified interference with the contractual relationship"[9] between Plaintiff and EWC, and that at the time Plaintiff suspended services to EWC, EWC owed Plaintiff "approximately $3,049,532 in principal plus approximately $97,000 in accrued interest."[10] Plaintiff contends that absent Nelson's representations and promises, it would have "substantially reduced or suspended its services" sooner (thus reducing or totally eliminating its losses), and that as a direct and proximate result of Nelson's "misrepresentations (intentional or negligent), silence, inaction, suppression of the truth and unfulfilled promises, Plaintiff sustained losses and damages in the sum of $3,264,965."[11]

On May 10, 2017, the state court confirmed a default and entered judgment against Nelson and in favor of BRIS in the sum of $3,264,965.00.[12] On June 9, 2017, Nelson removed the state court suit on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and related-to bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b).[13] As set forth in the Notice of Removal

---

[8] R. Doc. 1-2, ¶ 8 (alleging that shortly after executing the contract between EWC and BRIS, Nelson "acquired actual knowledge that [EWC] was insolvent and/or would likely be unable to fully pay Plaintiff for the services Brown & Root was providing under the Contract" and that in response to Plaintiff's inquiries, "Nelson failed to make full and accurate disclosures to Plaintiff, withheld relevant financial and business information, misrepresented material facts, actively suppressed the truth regarding the financial condition of [EWC], and made promises that he knew would not be fulfilled – all for the purpose of inducing Brown & Root to continue performing services under the Contract."); ¶¶ 9-10 (alleging various representations made by Nelson during an August 18, 2016 meeting on which Plaintiff relied in deciding to continue to provide services to EWC); ¶ 14 ("Plaintiff again relied, to its detriment, on the representations and promises made by Defendant Nelson to Mr. McManus in December 2016 and January 2017" and did not reduce or suspend service to EWC).

[9] R. Doc. 1-2, ¶ 17.

[10] R. Doc. 1-2, ¶ 18.

[11] R. Doc. 1-2, ¶ 25.

[12] R. Doc. 1-2.

[13] R. Doc. 1. On February 21, 2017, prior to filing the instant suit against Nelson, Plaintiff filed a separate action against EWC. R. Doc. 15-2. On April 7, 2017, EWC filed a Chapter 11 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Louisiana, 17-10327.

and a subsequently filed Motion for Relief from Judgment Under Federal Rule 60(b)(4),[14] Nelson contends that the May 10, 2017 default judgment entered by the state court is void due to improper service of process.[15] Specifically, Nelson contends that although Plaintiff attempted to serve the state court petition and citation through the Louisiana Long Arm statute by sending a certified copy of the petition and citation via Federal Express addressed to him at the address of 38 W. 26th Street, Apartment 7A, New York, NY 10010 (the "New York Address"), he "does not reside in the State of New York and does not live at the address where the petition and citation were delivered."[16] Nelson contends that he had no knowledge of the lawsuit against him "until he visited a cooperative apartment that is not his home" at the New York Address on June 2, 2017 and opened the Federal Express envelope.[17]

On June 20, 2017, Plaintiff filed the instant Motion to Remand.[18] Plaintiff primarily argues that Nelson's Notice of Removal was filed more than thirty days after service of the Petition and Citation and is therefore untimely.[19] Additionally, Plaintiff asserts that this court lacks related-to bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b) and lacks jurisdiction over the state court proceeding under the *Rooker-Feldman* doctrine.

---

[14] R. Doc. 4.

[15] R. Doc. 4, p. 1 ("the May 10, 2017 default judgment is void due to improper service of process and a lack of jurisdiction over Mr. Nelson."); R. Doc. 1, ¶ 7 ("The default judgment entered in this matter is an absolute nullity due to the fact that Defendant was not properly served with the petition and citation as required by law.").

[16] R. Doc. 1, ¶¶ 3 & 8. Nelson further contends that "the envelope was delivered by Federal Express to a person that was not authorized to accept service, legal process, mail or commercial courier delivered items on behalf of Defendant." R. Doc. 1, ¶ 8.

[17] R. Doc. 1, ¶ 9 ("Defendant had no knowledge of the lawsuit, the envelope or the contents of the envelope, until he visited a cooperative apartment that is not his home located at 38 W. 26th St., Apt. 7A, New York, NY 10010 on June 2, 2017."); ¶ 10 ("On June 2, 2017, Defendant opened the Federal Express envelope and first discovered the existence of the Petition and Citation issued by the 19th Judicial District Court for the Parish of East Baton Rouge.").

[18] R. Doc. 6.

[19] *See*, R. Doc. 6-3, p. 3 ("The singular issue presented by Plaintiff's *Motion to Remand* is whether the subject mailing and/or delivery of the Petition and Citation, effected by certified mail <u>and</u> FedEx addressed to the New York Residence, were sufficient to trigger the commencement of the 30-day period specified by 28 U.S.C. § 1446(b) for removal.").

## II. Law and Analysis

### a. Removal Was Timely

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281-82 (5th Cir. 2007). In its Motion to Remand, Plaintiff asserts that removal was untimely under 28 U.S.C. § 1446(b)(1), which provides the following:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).[20] Section 1446(b)(2)(B) clarifies that, "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999), the Supreme Court explained that the current version of 1446(b) was enacted "[t]o ensure that the defendant would have access to the complaint before commencement of the removal period" and clarified that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but

---

[20] In its Memorandum in Support of the Motion to Remand, Plaintiff seems to rely on the second part of § 1446(b) ("within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court, and is not required to be served on the defendant…."). However, because Plaintiff was required to serve a copy of the initial pleading on Defendant, this portion of § 1446(b) is inapplicable. La. R.S. § 13:3204(A) ("a certified copy of the citation…and of the petition…" shall be served).

5

not by mere receipt of the complaint unattended by any formal service." As the court explained, "the defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received." *Id*. at 354. *See also*, *DerMargosian v. Arpin America Moving Systems, LLC*, Civil Action No. 12-4687-D, 2013 WL 787091, at * 2 (N.D. Tex. March 4, 2013) ("The Supreme Court has implicitly recognized that receipt means actual receipt, not an earlier date that qualifies as such based on the date of service, by noting that a 'defendant's period for removal will be no less than 30 days from service' but may sometimes 'be more than 30 days from service, *depending on when the complaint is received*.'") (citing *Murphy Bros.*).[21]

The Louisiana Long Arm Statute allows service of nonresident defendants by sending a certified copy of the summons and complaint by certified mail or via a commercial courier. Pursuant to La. R.S. § 13:3204(A):

> In a suit under R.S. 13:3201, a certified copy of the citation…and of the petition…shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state….

"In order to satisfy the plain language of the Louisiana Long Arm Statute, the Plaintiff [ ] must send the citation by registered or certified mail or actually deliver the citation by commercial courier." *Major v. Patriot Disaster Services, LLC*, Civil Action 15-866, 2017 WL 457656, at * 2

---

[21] Both parties cite *Murphy Bros.* for the proposition that the deadline to remove is triggered by valid service of process. *See*, R. Doc. 6-3, p. 4 ("The Supreme Court, in [*Murphy Bros.*], held that the 30-day removal period begins to run when the plaintiff 'officially served [defendant] under local law by <u>certified mail</u>."); R. Doc. 15, p. 4 ("The deadline to remove a civil action does not begin to run until the defendant is validly served with process…."). In *Murphy Bros.*, the court considered whether the thirty day time period to remove began upon informal receipt of the state court petition (*i.e.*, receipt of a faxed courtesy copy of the petition prior to formal service of process). The court reasoned that until properly served, one is not officially a party and therefore not required to take any action in such capacity. 526 U.S. at 350. Accordingly, in *Murphy Bros.*, the removing party *had received* a copy of the Petition at the time of service. Here, it is uncontested that, assuming proper service on Defendant, Defendant did not receive the state court petition until June 2, 2017.

6

(M.D. La. Feb. 2, 2017).  In its state court Petition, Plaintiff alleged Nelson was "a nonresident whose domicile is unknown"[22] and requested service on Nelson pursuant to the Louisiana Long-Arm statute, La. R.S. § 13:3201, *et seq.*, at the New York Address.[23]  In addition to conveying a copy of the Petition and Citation to Nelson via Federal Express,[24] Plaintiff asserts in its Motion to Remand that it mailed a copy of the Petition and Citation to Nelson at the New York Address on March 27, 2017 via certified mail.[25]  Accordingly, Plaintiff contends that it validly served Nelson in accordance with La. R.S. § 13:3204 through both commercial courier and certified mail and that Nelson's removal was untimely because he filed the Notice of Removal "on June 9, 2017 – which was more than 70 days after the Petition and Citation were actually delivered, via certified mail <u>and</u> FedEx, to the New York Residence."[26]

In opposition, Defendant argues that he "was never validly served with process, either by commercial courier or certified mail.  Absent valid service of process, the 30-day removal deadline never began to run, and his removal was timely."[27]  Nelson contends that he does not reside at the New York Address and that he had no knowledge of Plaintiff's lawsuit against him until June 2,

---

[22] R. Doc. 1-2.

[23] R. Doc. 1-2.  Plaintiff explains that the New York Address was utilized based on the research of Fred McManus, Plaintiff's chief operating officer.  In his Declaration, Mr. McManus asserts that he had a business relationship with Nelson for over twenty years, and that in the course of his dealings with Nelson, was told that Nelson had homes in several places, including New York City, Miami, Florida, and New Orleans, Louisiana.  R. Doc. 6-2, ¶¶ 3-4.  Mr. McManus asserts that "Mr. Nelson never informed me that his 'primary' residence or domicile was in Florida" and explains that Nelson "told me that he grew up in New York and always considered it to be his home.  I also recall Mr. Nelson telling me that he had recently remodeled his home in New York City."  R. Doc. 6-2, ¶¶ 4 & 5.  Based on such statements, Mr. McManus states that he believed Nelson's "home and principal residence was in New York City" and explains that when BRIS was preparing to file suit, he "did some research and found that Gregory and Helena Nelson…owned a cooperative apartment with the" New York Address.  R. Doc. 6-2, ¶¶ 6 & 7.

[24] The Affidavit of Long Arm Service supporting Plaintiff's Motion and Order for Preliminary Default only sets forth Plaintiff's purported service via commercial courier (FedEx).  R. Doc. 1-2.  Accordingly, it appears that the state court's entry of preliminary default and a default judgment was based on service through FedEx.  It was not until the instant Motion to Remand that Plaintiff also asserted proper service was effected via certified mail.

[25] R. Doc. 6, p. 1.

[26] R. Doc. 6-3, p. 3.

[27] R. Doc. 15, p. 1.

7

2017.[28] In a Declaration attached to Notice of Removal, Nelson asserts that he lives with his wife and two elementary age children in Miami Beach, Florida, and that he has lived in Miami Beach since April 2012.[29] He explains that his family owns the apartment located at the New York Address, and that he "typically spend[s] approximately three to six weeks per year at the New York Apartment, often during Thanksgiving, Christmas, and the summer months. I sometimes stay at the New York Apartment during trips to New York for business or to visit my mother, who lives in Brooklyn, New York."[30]

With respect to service by commercial courier, Plaintiff contends that certified copies of the Petition and Citation were delivered to the New York Address on March 28, 2017, were signed for by "T. Trevor," and that Nelson actually received the FedEx parcel at the New York Address at a later date (presumably the June 2, 2017 date).[31] In his Declaration, Nelson asserts that the "apartment building at the New York Address does not have a doorman or someone who serves a similar function"[32] and that he does "not know anyone with any connection to the New York

---

[28] *See also*, R. Doc. 1-3, ¶ 14 ("My family and I arrived at the New York Apartment the evening of June 2, 2017. That was my first time at the New York Apartment in several months. When we arrived at the New York Apartment that evening, I found an unopened Federal Express envelope addressed to me inside the door. The Federal Express envelope contained a letter dated March 27, 2017 purporting to serve me with process pursuant to the Louisiana Long Arm Statute, and a copy of the lawsuit…filed by Brown & Root Industrial Services, LLC.").

[29] R. Doc. 1-3, ¶¶ 2-3. Nelson attaches his Florida driver's license and his Florida voter registration card, and explains that his children attend school in Miami Beach. R. Doc. 1-3, ¶¶ 4-6. Prior to living in Miami Beach, Nelson states that he lived in New Orleans, Louisiana for approximately five years. R. Doc. 1-3, ¶ 3.

[30] R. Doc. 1-3, ¶ 11.

[31] R. Doc. 6-3, p. 2. The tracking information related to the Federal Express shipment indicates that the Petition and Citation were delivered to the New York Address on March 28, 2017 and signed for by "T. Trevor." R. Doc. 1-2.

[32] R. Doc. 1-3, ¶ 13.

Apartment or New York Address named 'T. Trevor.'"[33] Mr. Nelson asserts, under penalty of perjury, that he was not aware that BRIS had filed a lawsuit against him until June 2, 2017.[34]

With respect to service by certified mail, Plaintiff contends that a second set of certified copies of the Petition and Citation were mailed to the New York Address on March 27, 2017, that this mailing was delivered to the New York Address, and that "a person purporting to act on behalf of Nelson signed the U.S. postal service return receipt."[35] Although there is a signature on the return receipt (the "Green Card"), the signature is illegible. In a Declaration attached in opposition to the Motion to Remand, Nelson asserts that he does not know who signed the Green Card, that he did not sign the Green Card, and that he did not authorize anyone to sign the Green Card.[36] He further states that he "did not refuse or fail to accept any certified mail from BRIS or its attorneys at any time" and that "[n]o one retrieved the Green Card related envelope for me as a courtesy."[37] He again states, under penalty of perjury, that he "did not visit or receive mail or Federal Express envelopes at the [New York Address] during the period of March 27, 2017…until June 2, 2017."[38]

---

[33] R. Doc. 1-3, ¶ 15. Nelson further explains that he has "learned that the Federal Express envelope was placed in the New York Apartment by a man named Tyreek Byard. Mr. Byard is the maintenance supervisor for the building at the New York Address. Mr. Byard had a key to the New York Apartment for the sole purpose of allowing Byard to let contractors I retained into the apartment to do work on the apartment." R. Doc. 1-3, ¶ 15. Nelson states that he did not authorize Mr. Byard or anyone else to accept mail or legal process for him, that Mr. Byard is not his employee or agent, and that neither Mr. Byard nor anyone else notified him of the FedEx envelope left in the apartment. R. Doc. 1-3, ¶¶ 16-17. *See also*, R. Doc. 1-3, ¶ 18 ("I have personal knowledge of the job description and duties of the maintenance supervisor for the building at the New York Address. The maintenance supervisor is not authorized to accept service of process or other legal documents for any residents of the building.").

[34] R. Doc. 1-3, ¶ 19.

[35] R. Doc. 6-3, p. 2. In support of its Motion to Remand, Plaintiff attaches the Declaration of Pennie Z. Braud, who asserts that she is the office administrator for Plaintiff's counsel. Ms. Braud states that she sent via certified mail certified copies of the Petition and Citation into an envelope addressed to Nelson at the New York Address on March 27, 2017. R. Doc. 6-1, ¶ 3. Ms. Braud further asserts that the signed returned receipt for the certified letter indicates delivery by the postal service on March 31, 2017. R. Doc. 6-1, ¶ 5.

[36] R. Doc. 15-1, ¶ 2. In his Opposition Memorandum, Defendant also notes that the section for the printed name of the recipient and the box to check indicating whether the recipient is the addressee or agent are blank. R. Doc. 15, p. 3.

[37] R. Doc. 15-1, ¶ 4.

[38] R. Doc. 15-1, ¶ 5.

9

The parties' briefing on the issue of timeliness is focused on whether service on Nelson was proper.[39] However, even assuming *arguendo* that Plaintiff's certified mailing or FedEx delivery to the New York Address is considered proper service, this court recently explained that "[t]he Supreme Court has interpreted Section 1446(b) to require a defendant to *receive* at the time of formal service (or after service of process if state law allows service of the summons without the initial pleading) a copy of the initial pleading before the 30-day period begins to run." *Baxter*, 2016 WL 3748720, at * 4 (citing *Murphy Bros.*, 526 U.S. at 354-355). As noted by this court in *Baxter*, "district courts have held that even where state law governing service explicitly provides that service is complete upon mailing, the 30-day period does not begin to run until a defendant is in actual *receipt* of the initial pleading." *Id.* (citing *DerMargosian*, 2013 WL 787091, at *2; *Freedom Steel, Inc. v. Senn Freight Lines, Inc.*, No. 09-2750, 2010 WL 395228, at * 4 and n.1 (N.D. Ohio Jan. 26, 2010) (noting that while Ohio law provides that "[s]ervice by mail is complete upon mailing," the 30-day removal period pursuant to Section 1446(b) "does not being to run until the defendant is in actual receipt of the complaint via mail service.")). Accordingly, "[e]ven if the Louisiana Long Arm Statute implicitly provides that service is perfected upon mailing, the Court agrees that in light of *Murphy Brothers*, the 30-day period to remove only beings to run where a defendant has been properly served and actually receives a copy of the initial state court pleading." *Id.* The *Baxter* court went on to explain that such result was consistent with "analogous rulings…that a defendant must actually receive a copy of the initial pleading to trigger the 30-day period to remove an action where service is made on a statutory agent under state law" as well as "holdings concluding that a defendant cannot defeat service by certified mail pursuant to the

---

[39] Because the timeliness of Defendant's removal is based on the date of receipt, no determination is made herein regarding the sufficiency of service on Defendant. Arguments regarding the sufficiency of service are more appropriately considered in the context of Defendant's Motion for Relief from Judgment, wherein Defendant likewise argues that service of process was improper and ineffective. R. Doc. 4.

10

Louisiana Long Arm Statute where the defendant refuses to accept service or the letter is otherwise marked as 'unclaimed.'" 2016 WL 3748720, at * 4-5 (internal citations omitted). *See also*, *Gordon v. Bancorpsouth Ins. Services, Inc.*, Civil Action No. 16-724, 2017 WL 2222384, at * 4 (M.D. La. March 29, 2017) (finding service on defendant's registered agent did not trigger thirty day removal period and explaining "this court finds no reason to depart from the well-established rule that the thirty day time period for removal does not begin to run until a defendant is actually supplied with a plaintiff's initial state court petition.") (*citing First Choice Surgery Center of Baton Rouge, LLC v. United Healthcare Services, Inc.*, Civil Action No. 12-CV-0065, 2012 WL 3109483, at * 3 (M.D. La. July 30, 2012)).[40]

Here, Plaintiff has presented no evidence to contradict Nelson's sworn statements that he did not visit or receive mail at the New York Apartment prior to June 2, 2017, nor has Plaintiff contested Nelson's assertion that he was not aware of Plaintiff's lawsuit against him until June 2, 2017. Assuming *arguendo* that Defendant was properly served via certified mail or commercial courier, Nelson's thirty day time period to remove was triggered by his receipt of the Petition on June 2, 2017 and therefore the June 9, 2017 Notice of Removal was timely. Alternatively, if Defendant was never properly served, Defendant's thirty day window to remove never began to run such that Defendant's removal was timely (and early). *See*, *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000) ("Generally, service of process is not an absolute prerequisite to removal."); *Foster v. Rescare, Inc.*, Civil Action No. 16-670, 2016 WL 3388387, at * 2, n. 13 (E.D. La. June 20, 2016) ("[Defendant] was not required to wait until it was properly served to

---

[40] The cases relied upon by Plaintiff in its Motion to Remand, *Hamilton v. Alvarado-Cruz*, Civil Action No. 08-653, 2009 WL 2175995 (M.D. La. July 21, 2009) and *Stogner v. Nelson and Hiebert Systems, Inc.*, Civil Action No. 07-4058, 2008 WL 4587304 (E.D. La. Oct. 15, 2008), address the issue of whether service was proper but do not bear on the question presently before the court which is when the time period for removal begins to run. R. Doc. 6-3, pp. 6-8.

remove this case. As the Fifth Circuit has explained, service of process is 'not an absolute prerequisite to removal.' Once [plaintiff] commenced this action by filing her state-court petition, [defendant] was permitted to remove without waiting to see when, if ever, [plaintiff] would perfect service of process."); *Defrancesch v. Employers Mut. Cas. Co.*, Civil Action No. 07-5843, 2007 WL 3172103, at *1, n. 2 (E.D. La. Oct. 29, 2007) ("The Court notes that at the time of removal [defendant] had not been formally served but…formal service of the petition is not required for removal. On the other hand, the thirty-day period for removal does not begin to run against a defendant until formal service is completed.") (internal citations omitted). Accordingly, the undersigned recommends that Plaintiff's Motion to Remand based on timeliness be DENIED.

   b. **Subject Matter Jurisdiction**

      i. **Jurisdiction Exists Pursuant to 28 U.S.C. § 1332**

In his Notice of Removal, Defendant asserts that, in addition to diversity jurisdiction, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." As noted above, on February 21, 2017, prior to filing the instant suit against Nelson, Plaintiff filed a separate action against EWC.[41] On April 7, 2017, EWC filed a Chapter 11 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Louisiana, 17-10327 (the "EWC Bankruptcy"). In support of its Motion to Remand, Plaintiff argues that Defendant "has submitted <u>no evidence</u> to support his assertion that the Judgment rendered in the State Court Action (and/or resolution of this action) '*is likely to alter the rights, obligations or other property of EWC and its bankruptcy*

---

[41] R. Doc. 15-2.

*estate in the Title 11 proceeding currently pending in this federal district.*' Accordingly, this alleged basis for removal jurisdiction should be ignored."[42]

Plaintiff filed the instant Motion to Remand on June 20, 2017.[43] After briefing by the parties,[44] on October 5, 2017, the undersigned ordered Defendant to file a Motion to Substitute the original Notice of Removal with a Notice of Removal that adequately alleged the citizenship of the parties.[45] In so ordering, the undersigned noted that "[i]n the Motion to Remand Plaintiff argues, *inter alia*, that this court lacks related-to bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b). Because Plaintiff has challenged this court's jurisdiction under 28 U.S.C. § 1334(b), the undersigned here requires Defendant to amend his allegations regarding Plaintiff's citizenship to determine whether original jurisdiction pursuant to 28 U.S.C. § 1332 exists."[46]

On October 10, 2017, Defendant filed the as-ordered Motion to Substitute, which was granted on October 12, 2017.[47] Per the as-substituted Notice of Removal, Defendant alleges that he is domiciled in Florida.[48] With respect to BRIS, Defendant alleges that BRIS is a limited

---

[42] R. Doc. 6-3, p. 14 (Emphasis in original briefing).

[43] R. Doc. 6.

[44] Nelson's opposition to the Motion to Remand was filed on July 12, 2017. R. Doc. 15. Thereafter, Plaintiff filed a Reply in support of the Motion to Remand on July 18, 2017, and Nelson filed a Sur-Reply on August 7, 2017. R. Docs. 16 & 19.

[45] R. Doc. 20.

[46] R. Doc. 20, p. 1, n. 1. *See*, 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). *See also*, *Whitmore v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000) (instructing that § 1653 "is to be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds."); *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir. 1979) (amendment is permissible where "original petition for removal…failed to specifically allege the citizenship of the parties at the time the suit was brought and at the time the removal petition was filed."); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919-920 (5th Cir. 2001) ("when the record establishes the diversity of the parties, but the party asserting federal jurisdiction has failed to specifically plead that the parties are diverse, we allow that party to amend its pleadings to correct for their technical deficiency.").

[47] R. Docs. 21 & 22.

[48] R. Doc. 1, ¶ 14.

13

liability company with two members, KBR, Inc. and Bernhard Capital Partners Management, LP.[49] Defendant alleges that KBR, Inc. is a Delaware corporation with its principal place of business in Texas, and that Bernhard Capital Partners Management, LP is a limited partnership with two partners, Jeffrey Jenkins and Jim Bernard, who are "both domiciled in Louisiana."[50] These are sufficient allegations of citizenship and indicate that the parties to this action are completely diverse. *See*, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Turner Bros. Crane and Rigging, LLC v. Kingboard Chemical Holding Ltd.*, Civil Action No. 06-88-A, 2007 WL 2848154, at *4-5 (M.D. La. Sept. 24, 2007) ("when partners or members are themselves entities or associations, the citizenship must be traced through however many layers of members or partners there may be, and failure to do [sic] can result in dismissal for want of jurisdiction.") (quotation and citation omitted); *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (In diversity cases involving corporations, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation."). Moreover, per Plaintiff's Petition, BRIS has alleged that it sustained losses and damages in the sum of $3,264,965.[51]

Pursuant to 28 U.S.C. § 1332, a district court has original subject matter jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between (1) citizens of different States." Accordingly, regardless of whether this court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), original jurisdiction over this suit exists pursuant to 28 U.S.C. § 1332. Accordingly, the undersigned

---

[49] R. Doc. 1, ¶ 13.

[50] R. Doc. 1, ¶ 13.

[51] R. Doc. 1-2, ¶ 25.

recommends that Plaintiff's Motion to Remand based on the asserted lack of subject matter jurisdiction be DENIED.

### ii. Exercising Subject Matter Jurisdiction In This Case Is Not An Exercise of Appellate Review Over a State Court Judgment

"'The *Rooker/Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments.'" *Smith v. Shelter Mutual Ins. Co.*, Civil Action No. 15-357, 2015 WL 6454825, at * 2 (M.D. La. Oct. 26, 2015) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)). "Over time the Supreme Court has made it clear that the *Rooker/Feldman* doctrine is an extremely narrow doctrine." *Id*. (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013)). Plaintiff argues that remand is warranted here pursuant to the *Rooker-Feldman* doctrine, which according to Plaintiff, "prohibits federal district courts from exercising appellate jurisdiction over state court judgments."[52] Plaintiff argues that Defendant's "primary objective is to have this Court review and set aside" the state court default judgment, such review would be an exercise of appellate jurisdiction,[53] and therefore this court lacks original subject matter jurisdiction.

The Fifth Circuit has explained that "[a] state court judgment in a case properly removed to federal court…can be vacated under Federal Rule of Civil Procedure 60(b)." *FDIC v. Yancey Camp Development*, 889 F.2d 647, 648 (5th Cir. 1989) (removal following default judgment and subsequent appeal). *See also*, *Murray v. Ford Motor Co.*, 770 F.2d 461 (5th Cir. 1985) ("When the case was removed to federal court, the default judgment stood as if it had been issued in the federal court."); *In re Meyerland Co.*, 960 F.2d 512, 517 (5th Cir. 1992) ("In *FDIC v. Yancey*…a

---

[52] R. Doc. 6-3, p. 14.

[53] R. Doc. 6-3, p. 14.

case which was on appeal, we allowed removal and the district court set aside a default judgment.").

In *Bernadas v. American Empire Surplus Lines Ins. Co.*, Civil Action No. 07-2966, 2007 WL 4180541, at * 1 (E.D. La. Nov. 21, 2007), the Eastern District of Louisiana considered whether the court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine because removal occurred after the state court's entry of a default judgment. In denying the motion to remand, the court explained that "[t]he Fifth Circuit, like the Ninth Circuit and other courts, has allowed removals following entry of state court default judgments." (citing *FDIC v. Yancey Camp. Dev.*, 889 F.2d at 648; *Murray*, 770 F.2d at 463; *Butner v. Neustadter*, 324 F.2d 783, 784-86 (9th Cir. 1963)). Further, the court explained that unlike the appellate review prohibited by the *Rooker-Feldman* doctrine, "a removal effected under the factual circumstances presented here implicates this Court's original jurisdiction…." *Id*. at * 1 (citing *In re Meyerland*, 960 F.2d at 516, n. 6 ("the modern view of removal is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court….Under the modern understanding, removing this case does not constitute the appeal of a state court judgment to federal court.") (internal citations omitted)). *See also*, *In re Meyerland*, 960 F.2d at 520 ("A case removed from state court simply comes into the federal system in the same condition in which it left the state system."). This court has similarly noted that "'the weight of authority establishes that a defendant has the ability to remove a case to federal court where an entry of default or default judgment has previously been entered in state court." *Payne v. Forest River, Inc.*, Civil Action No. 13-679, 2014 WL 1120251, at * 1, n. 1 (M.D. La. March 20, 2014). Accordingly, the undersigned recommends that Plaintiff's Motion to Remand based on application of the *Rooker-Feldman* doctrine be DENIED.

### c. Plaintiff's Additional Arguments Raised in Reply Are Rejected

Finally, in its Reply Memorandum, Plaintiff argues that even if bankruptcy jurisdiction exists, this court should exercise its discretion to abstain and remand this suit pursuant to 28 U.S.C. § 1452(b) and 28 U.S.C. § 1334(c)(1). Pursuant to 28 U.S.C. § 1452(b), the court to which a claim related to a bankruptcy case is removed "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1334(c)(1) provides that "[e]xcept with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

"It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dallas Independent School Dist.*, 278 Fed. Appx. 307, 315 (5th Cir. 2008) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir.1989); *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, Civ. A. Nos. CA3–88–2871–D, CA3–89–1927–D, CA3–89–2361–D and CA3–89–2559–D., 749 F. Supp. 758, 772 (N.D.Tex.1990)). That notwithstanding, because this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, it is not necessary to determine whether this court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). Where, as here, this court properly has original jurisdiction pursuant to 28 U.S.C. § 1332, the exercise of such jurisdiction is not discretionary. *See*, *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) ("When the district court has original subject matter jurisdiction over state law claims, the exercise of that jurisdiction is mandatory.").

### III.    Conclusion

For the reasons set forth herein, the undersigned RECOMMENDS that Plaintiff's Motion to Remand[54] be DENIED.  In the event this recommendation is adopted, the undersigned further RECOMMENDS that this matter be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, on October 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[54] R. Doc. 6.